You may proceed. May it please the Court. My name is David Thomas. I represent the plaintiff and appellant Lawrence Moyer. At the outset, I'd like to reserve two minutes for rebuttal. Your Honors, this case comes to this Court on a section 1915a screening. The issue before the Court is whether the district court erred by dismissing Mr. Moyer's complaint for failure to state a claim under the ex post facto clause. The issue is also whether the district court erred by failing to construe Mr. Moyer's complaint as stating a claim under the takings clause, or whether the district court erred by failing to grant him leave to amend to allege sufficient facts to state a takings clause. Mr. Moyer is challenging the administrative fee that the California Department of Corrections levies on every deposit he makes into his inmate trust account. Mr. Moyer is challenging particularly the way the fee is calculated, if there is no relationship whatsoever to the actual administrative expenses the department incurs in processing restitution fine deductions. How much does it come to in a particular incident? Pardon me, Your Honor? How much is it for him in one particular case? How much would it cost him? In Mr. Moyer's complaint, based on his allegations, there's been approximately 58 cents withheld for the administrative fee for each deposit. Well, you know, in these administrative matters like that, with small amounts of money, it's hard to get an exact amount. And you say, well, it's punitive, but, you know, they're making a rough guess as to what it costs, and 58 cents doesn't strike me as unreasonable. Your Honor, over the course of Mr. Moyer's sentence, he will pay 500 extra dollars for administrative fees. That's right. He's in an environment where those things mount up. There's no doubt about it. But in any other environment, 58 cents for that sort of thing would not strike anybody as punitive, just the way business is done. Your Honor, there is no evidence in the record whatsoever as to the amount of administrative expenses. Well, people make a rough gauge. It costs something to do it, doesn't it? It takes somebody's time. Your Honor, and that's why we're simply asking that the Court send this case back down to the district court for the reception of evidence. If the State is correct that its administrative expenses roughly equal that, then so be it. But there is no evidence whatsoever in the record. Moreover, Your Honor, Mr. Moyer is seeking prospective relief. It may be in the future that his deposits may be much larger, and the administrative fees withheld may exceed 58 cents. And this Court has held – excuse me – this Court, as well as the U.S. Supreme Court, has indicated that one of the factors that the Court are supposed to look to to determine whether this is not punitive or is punitive in effect is whether it's reasonably related to the amount to a rational, nonpunitive interest. But do you see any indication of a punitive motive other than your guess that it's not related? No, Your Honor. We are not asserting the ex post facto claim based on a punitive intent. We're asserting it based on the second prong of the Smith v. Doe and Russell v. Gregoire test, which is that it's punitive in effect. And it's punitive in effect because as the U.S. Supreme Court said in Smith v. Doe 1, you look to the Kennedy v. Mendoza and Martinez factors, and there are four or five that are the most important ones. These include whether it's reasonably related to a – has a rational connection to a nonpunitive purpose or is excessive with respect to that purpose. In addition, whether it promotes the traditional aims of punishment, which the Supreme Court in Traub v. Dulles has indicated are deterrence and retribution. And I think here, Your Honor, People v. High, a recent California court of appeal case, is instructive. In People v. High, the California court of appeal looked at a state construction penalty. And one of the issues it looked at, in addition to whether it was punitive intent, was the fact that this construction penalty was based on the gravity of the underlying offense. And that's exactly what we have here. As the underlying fine increases, the amount of administrative fee increases as well. And High said – the High court said that promotes the traditional aims of deterrence and retribution. Now, Your Honors, Mr. Moyer – Sotomayor, will you contrast Schneider II and Sperry? Yes, Your Honor. Schneider II, we think, is on all fours in this case, and I think the brief discusses that. We think that Sperry is not opposite. Sperry Corp. is what we call a user fee case. And Sperry Corp. and this Court's decision in Vance v. Barrett indicate that a user fee occurs when it's a governmental assessment, a monetary assessment, on a certain class of persons who enjoy a particular governmental benefit to pay for the expenses associated with providing that benefit. And for two reasons here, at least two reasons, we think this is not a user fee. First of all, Mr. Moyer does not get a benefit from essentially having his deposits garnished. He's having a judgment levied against him. That's not a benefit. It's not like being able to, in Sperry Corp., avail oneself of the Iran-United States Claims Tribunal or in Vance v. Barrett, where the monies were used to pay for the inmate trust accounts. But moreover, what Sperry Corp. makes absolutely clear is that there must be a reasonable relationship between the amount of the user fee and the amount of expenses actually associated with providing that governmental benefit. Scalia. It's a very rough comparison, isn't it? Goldstein. To which I'm sorry? Scalia. It's a very rough comparison. That is, it doesn't have to be dollar for dollar. Is that right? Goldstein. Your Honor, we're not suggesting there has to be a precise, exact comparison. In Sperry Corp., the Supreme Court said that there must be a fair approximation. Your Honor, there is. Your Honor, there is no evidence in the record that there is any fair approximation, any reasonable relationship. If Mr. Moyer tomorrow deposits $1,000, his administrative fee will be much larger. And, in fact, the administrative ---- Kennedy. But why isn't it a benefit to him to have his just debt paid? Goldstein. Your Honor, because he's giving up money. We do not think that that's a benefit. But you think it was a debtor to have his debt collected? That is a benefit of a sort. Goldstein. Your Honor, even if it is a benefit, it's ---- there's still no evidence that it's reasonably related. And that's what Sperry Corp. says. It must be reasonably related, and it must be a fair approximation. Vance v. Barrett specifically said that there was no allegation that the fees withheld, the interest withheld, was excessive or not reasonably related. In fact, Sperry Corp. emphasized that there was not even any suggestion that the ---- the 1.5 percent fee was excessive with respect to the expenses. So, Your Honors, this is all we're asking, is that Mr. Moyer's ex post facto and takings claims go forward. We're not asking for a decision on the merits. The State, in 26 pages of briefing, does not even provide ---- does not even attempt to provide a reasonable justification for the 10 percent. This is not like Taylor v. Rhode Island, which was a $15 probation fee. It's not like People v. Rivera, which was a $133 jail classification fee and a $35 jail booking fee. The State of California has proved able to come up with a fair approximation. There's no reason it should do so here. And I'll reserve the rest. Thank you very much, Your Honor. We'll hear from the State at this time. Counsel. May it please the Court. My name is Constance Picciano. I'm appearing today for the State of California Department of Corrections, providing amicus briefing to the Court. In this case, what we have is the imposition of a fee, which is not retrospective. It applies solely and only to future deductions that are taken from Mr. Moyer's account, and only to the extent that he fails to or continues to fail to pay his restitution fine. Isn't the date you figure from would be either the date of the crime or the date of conviction rather than when you start imposing the fee? Well, I think the appropriate date that must be examined is the date on which the fee is withheld, not the date of Mr. Moyer's conviction. When he was convicted and the What does his complaint say on this point? They are claiming that it applies to the ex post facto because it applies to the date of his conviction and applies to his restitution fine. Don't we have to accept that as true for the purpose of this appeal? Not that it has ex post facto effect, but the date. Don't we have to assume that all well-pleaded facts in the complaint are true? We do not disagree that Mr. Moyer's crime was committed prior to the effective date of Penal Code Section 2085.5 requiring the 10 percent fee. However, the 10 percent fee, our position is that is not retrospective because it is not applied to any past payment that he made on his restitution fine. It applies only to future payments, and it applies only to the extent that he refuses to pay his fine and the State is compelled to withhold it from his trust account. Do I understand correctly that this deduction increases over time? No, it would increase, Your Honor, if the department withheld a higher percentage of his trust account monies. At the time he brought suit, the department was withholding 20 percent of his wages. The statute was amended again to require the withholding of 40 percent of his wages. So obviously 10 percent of 20 percent is less than 10 percent of 40 percent. And it ultimately could go up to a maximum of 50 percent? Yes, Your Honor. And do I understand also correctly from the complaint again that the fee is based on the severity of the crime? No, Your Honor. It is based upon the amount of withholding. So the fee is based solely and only on the inmate deposits, the amount deposited to his trust account. So, for example, Mr. Moyer has a job in which he earns $22.62 per month. The maximum wage that the Department of Corrections pays to an inmate similar to Mr. Moyer is $56 per month. So obviously if he earned $56 a month, the amount withheld for his restitution fine would be larger than he's currently paying. So if he gets a higher-paying job, or if someone were to give him money, for example, at the time involved in the complaint for which there is a record, and I'd refer the Court to page 8 of the supplemental excerpts of record for his trust account transactions shows that he had one gift of $22 from which I forget exactly how much was withheld, $5 or something of that. And there is the 10 percent fee is also charged on that. So to the extent that someone gives him money or he gets a higher-paying job, yes, he will pay a larger fee. But it has nothing to do with the amount of his fine or the severity of his crime. Well, isn't the fine based on the severity of the original fine itself? It's based upon the severity of the crime. Is that right? Well, Your Honor, I'm not an expert in criminal law. But the fines can be based on a variety of things, including how much the victim was harmed, the ability of the criminal defendant to pay a fine, and the amount that it costs the county to prosecute him. It's not a simple formula of you commit X violent crime, you get this fine, or you commit this X property crime, and you get this fine. Go on to whatever else you have. Excuse me. Yes. Do we know, based on the current record, what the any approximation of what the actual administrative costs are? No, Your Honor. All we have is a reference to this Court's decision in the Schneider case. And unfortunately, it's in a footnote, but it is an observation that when processing the transaction of merely calculating the interest on an inmate trust account, the expense involved there could well exceed $5 per transaction. And in this case, the Department of Corrections is withholding 58 cents for which Mr. Moyer receives the services of bookkeepers, accountants, secretaries, office supplies, office equipment, and postage. And on a monthly basis, the withholding from his account is transmitted to the victim's compensation fund, and a notice is sent to the county of the payment. So the Department of Corrections is required to do two transactions, basically, or two notices, one to send the money to the compensation fund, and the other to notify the county. So there's obviously postage, stationery, secretarial services. Then from the ---- What you're just describing, is this in the record? I think that from the statute requires the transmission of the money 20 ---- No. What I'm trying to find out, this might be a different matter, at least in my mind, if it were up on summary judgment, where there had been some factual determination about the relation of administrative costs to the fee collected. But my understanding of the state of the record is that we simply don't know that. It could be that it bears a close relation or it's in the ballpark. It could be wildly disproportionate. We just don't know that, do we? Well, I don't think we know for sure exactly how much it costs. And once again, I refer the Court back to the Sperry decision, where the simple calculation of interest earned, the observation of the Court was that it could cost in excess of $5 to process that one transaction. The statute requires both transactions to be done for Mr. Moyer, and from the record we have, his accounting records, which obviously involve bookkeeping and accounting services, done on a monthly basis for Mr. Moyer, because there's a separate, if you look at page 8 of the supplemental excerpts of record, there's a separate accounting system set up to account for the restitution fine, withholdings, and payments. So on a monthly basis, he gets a notice of how much has been withheld and how much has been contributed toward his fine. And the two transactions, can you state again what they are? They are the withholding of the money and the payment of the money to the restitution fund. Okay? It goes to the State Victims' Compensation and Government Claims Board, and the board then pays it into the restitution fund. That's all in the statute. Yes. Then how about the notice to the county? That is also in the statute. It specifically requires that for each transaction where it is paid toward the fine, the county must be notified of the payment that is made. I think the Sperry case is directly on point in this situation with regard to the takings clause, because Sperry does not require an exact correlation between the services received by the individual and the amount of the fee that is charged. In Sperry, the Sperry Corporation negotiated a settlement and did not use the services of the tribunal at all. It recovered, I think, $2.8 million, of which the Federal government charged them 15 percent, for the support of the tribunal. And the Supreme Court found that it doesn't have to be an exact correlation between the services received, only if the amount is reasonable with regard to the operation of the entire program across the board. That translates into the Taylor case cited by the plaintiff, which was the $15 supervision fee, that was found not to violate the ex post facto clause because there was no evidence in the record that the $15 fee charged to all of the individuals under supervision and that's $15 per month, was in excess of what it cost to operate the entire program. Thank you for your argument, counsel. Rebuttal. Yes, Your Honors. A few quick points. First of all, United States v. Pascal makes clear that this is retrospective. United States v. Pascal looked at a subsequent, after the commission of the offense, an increase in penalties for violations of supervised release. The Court says you have to look at the penalty scheme at the time of the commission of the offense. At the time of the commission of Mr. Moyer's offense, there was no 10 percent administrative fee imposed. It was subsequently. And indeed, under California regulations, it will go up to 50 percent in about 50 percent of each deposit. There will be a restitution, fine deduction, and then 10 percent on top of that. Secondly, the State is incorrect that there is that the amount of the administrative fee is not based on the amount of the restitution fine. I'll give you an example. Let's say you have two prisoners. Both are sentenced to a $1,200 restitution fine. The first prisoner makes deposits for which $100 are withheld each month for the restitution fine deduction, so he pays it off in one year. $10 is withheld each month for the administrative fee, $120 in one year. Prisoner B pays it off over 10 years, makes one-tenth the deposit. So $10 are being withheld each month. But only $1 is being imposed as an administrative fee each month. So after 120 payments over 10 years, both are paying $120 in administrative fees. It's based on, it's 10 percent of the underlying restitution fine. People v. High says that this smacks of a punitive effect. And finally, Schneider II did not deal with the type of expenses and scheme that we have here. There's nothing in the record to say what these things cost. We're just asking – I see I'm out of time, Your Honor. And, Your Honor, we're just asking that the Court vacate the district court's grounds for the reception of evidence. If the State is – if everything is true as the State says it is, then evidence should support that. Thank you very much, Your Honors. Thank you. Thank both counsel for their arguments. The case just argued will be submitted. Mr. Thomas, your firm took this pro bono? Yes. Thank you.
judges: Noonan, Hawkins, Reed